Ryan R. West, #10398, rrw@corvuslaw.com
Tyson B. Snow, #10747, tbs@corvuslaw.com
CORVUS LAW GROUP, LLC
15 West South Temple, Suite 1000
Salt Lake City, Utah 84101
Telephone: (888) 315-4735
Facsimile: (888) 316-0929

Attorneys for Plaintiffs

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| ELIZABETH R. COREY,<br><br>    *Plaintiff*,<br><br>v.<br><br>COUNTRYWIDE BANK FSB, BAC HOME LOANS SERVICING, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, JOHN DOE I, and JOHN DOES 2 through 10, inclusive.<br><br><br>    *Defendants*. | **MEMORANDUM IN OPPOSITION TO DEFENDANTS BANK OF AMERICA, N.A.'S, BAC HOME LOANS SERVICING, LP, AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S MOTION TO DISMISS**<br><br><br>Case No. 2:11-cv-00409-DB<br><br>Judge Dee Benson |

Pursuant to Rule 7 of the Federal Rules of Civil Procedure and DUCivR 7-1, Plaintiff

Elizabeth R. Corey ("Plaintiff") respectfully submits this memorandum in opposition to

Defendants Bank of America, N.A.'s, BAC Home Loans Servicing, LP's ("BAC"), and

Mortgage Electronic Registration Systems, Inc.'s, Motion to Dismiss.

## INTRODUCTION

In their Complaint, Plaintiff alleges that MERS and the "substitute trustee" (ReconTrust) do not have the authority to initiate, assign to a third party, or cause a substitute third party to conduct a non-judicial foreclosure on their Property located at 4153 West Sunrise Drive, Park City, Utah 84098 ("Subject Property") or, at a minimum, must establish their legal authority to do so. Plaintiff alleges that MERS may have *had* the authority of a beneficiary under the original trust deed but lost any authority it *may have had* when Countrywide, Plaintiffs' original lender, sold the Note to an unknown third party shorty after it was executed. In moving to dismiss the Complaint, Defendants side-step this issue and focuses on causes of action that Plaintiff does not plead. Moreover, recently enacted Utah law prohibits ReconTrust from conducting foreclosures in Utah, as ReconTrust does not qualify as a trustee with the "power of sale" under Utah statutory law.

The entirety of Defendants' motion to dismiss rests on the assumption that MERS was a proper Trust Deed beneficiary at the time it purportedly assigned its beneficial interest in the Trust Deed to BAC. Defendants' motion cannot survive on this assumption. First, courts across the country are recognizing that MERS cannot serve as a beneficiary under a trust deed in any instance because MERS does not risk anything in the transaction or actually receive any beneficial rights or interest. Second, and more important for purposes of Plaintiff's Complaint, numerous courts, including courts in Utah, have recognized that once a promissory note is sold, assigned, or transferred, the security instrument associated with the note (including the rights defined in the instrument) are transferred to the subsequent note holder. In this case, it is undisputed that Plaintiff's Note was sold, assigned, or transferred immediately upon funding and,

2

therefore, MERS must have a separate agency agreement with subsequent Note holder in order

retain its status as a "beneficiary" under the Trust Deed.  Plaintiff has alleged no such agreement

exists.  MERS, BAC, ReconTrust, and Bank of America have refused to provide Plaintiff with

proof of any such agreement.  And, absent such proof, this factual issue cannot be resolved at

this stage in the proceedings.

Defendants try to characterize Plaintiff's request for a declaration of rights as an attempt

to "…escape the consequences of defaulting on her mortgage."  (Defendants' Motion to Dismiss

("Defs.' Mot.") at 2.)  Contrary to Defendants' assertion, Plaintiff merely seeks to ensure that the

proper parties, pursuant to the proper authority are conducting the non-judicial foreclosure.

Should Defendants actually have the rights they ask the Court to *assume* they have, rights that

can only be established following a factual inquiry, the Court's declaratory ruling will allow

Defendants to move forward and exercise those rights.  There is no basis, however, to deny

Plaintiff's right to seek declaratory relief in this regard.

To be clear, Plaintiff does not challenge the authority of the proper Note Holder or a

legally and properly appointed trustee to act on behalf of the Note Holder, including the right to

exercise the remedies defined in Trust Deed.  But as courts, legislatures, and commentators have

repeatedly recognized, MERS creates a system where homeowners are left in the dark as to who

actually owns their home loans (because the transactions are not publicly recorded) and, as a

result, "purported" trustees or servicers have repeatedly foreclosed on homes *without* the

authority to do so.

Plaintiff simply seeks, through her claim for declaratory relief, a determination as to the

rights of the parties based on sufficient evidence to determine whether MERS or BAC own the

Note at issue and/or whether ReconTrust and Bank of America are acting on behalf of the true Note Holder.  Plaintiff *is not* attempting to void the Note or Trust Deed or obtain a ruling invalidating their debt.  Despite what Defendants would have the Court believe, Plaintiff is not attempting to get the Subject Property for free.

This case must be distinguished from the flurry of cases brought by plaintiffs seeking to get free houses on a "securitization" theory.  The law underlying Plaintiff's claims is clear: only the owner (or holder in due course) of a secured debt holds the right to foreclose on that debt pursuant to a security instrument and only the owner of a secured debt holds the right to direct a properly appointed agent to foreclose on the debt.  Further, under well-established Utah statutory law, a non-judicial foreclosure may only be conducted by a properly appointed trustee who meets specific statutory requirements.  These requirements are in place to ensure that, prior to conducting a foreclosure sale, the homeowner's interests have been adequately protected.  As alleged by Plaintiff, Defendants have failed to take the necessary precautions, particularly in this case, as ReconTrust, an entity that has no authority to conduct non-judicial foreclosure sales under Utah statutory law continues to march to a non-judicial foreclosure sale without the proper authority to do so.

It is well known that in general, as in this case, MERS, BAC, and Bank of America have repeatedly engaged in hidden transactions in order to avoid the time-honored public recording system.  As a result, MERS, BAC, Bank of America and other institutional lenders have created a morass of confusion regarding mortgage ownership.  They continue to refuse to reveal information, to Plaintiff and others, regarding their behind-the-scenes dealings and failures to properly document the sales, assignments, and transfers of hundreds of thousands if not millions

of mortgages and promissory notes (including Plaintiffs' Note).  Many are questioning the

legality and losing patience with this scheme.[1] [2]  The actions of MERS, BAC, and ReconTrust,

as well as the other defendants, have forced Plaintiffs to bring this declaratory action to

determine the rights of the parties with respect to the Note, Trust Deed, and Subject Property.

Because of the way in which MERS operates, homeowners such as Plaintiff has no recourse but

to turn to the courts when their servicers and lenders refuse to provide them with information

establishing the authority of the servicer, lender, or successor trustee to foreclose.

　　　　The point cannot be made strongly enough.  Just recently, a coalition of attorneys general

described a litany of offenses by mortgage bankers, lenders, and servicers, including BAC.  "The

moves by states show attorneys general are aggressively targeting the mortgage servicing

industry . . . ."  McLaughlin, David,  Fisk, Margaret Cronin, and Kopecki, Dawn, *BofA Targeted*

*as Attorneys General Step Up Pressure in Foreclosure Probe*, May 25, 2011, *available at*

http://www.bloomberg.com/news/2011-05-26/bofa-targeted-as-states-step-up-pressure-in-

foreclosure-probe.html (*last accessed* July 8, 2011).  "New York Attorney General Eric

---

[1] *See* Prashant Gopal, *Arizona Bill Would Void Foreclosures Without Full Title History*, Bloomberg, Feb. 23, 2011, http://www.bloomberg.com/news/2011-02-23/arizona-bill-would-void-home-foreclosures-without-complete-title-history.html ("Arizona may become the first state to require lenders to prove they have the right to foreclose by providing a complete list of any previous owners of the mortgage, under a bill passed yesterday by its Senate."); *id.* ("Lawmakers in states including New York, Oregon and Virginia also have proposed legislation to address concerns among consumer advocates that lenders or mortgage servicers are using incomplete or false paperwork to repossess properties in default. The attorneys general of all 50 states are jointly investigating how the mortgage-servicing industry operates.") (*last accessed* July 8, 2011).

[2] *See generally* Berdard, Moe, *Connecticut Sen. Duff Brings Bill Through Senate to Stop MERS*, LoanSafe.org, May 20, 2011, http://www.loansafe.org/connecticut-sen-duff-brings-bill-through-senate-to-stop-mers ("Additionally, property owners would no longer be allowed to register with the Mortgage Electronic Registration System (MERS) and instead would be required to register with the local municipal town clerk.") (*last accessed* July 8, 2011).

Schneiderman is investigating banks' mortgage securitizations, and California Attorney General Kamala Harris announced Monday that she has established a mortgage fraud task force." *Id.* "It's clear that servicers have done a lot of bad things and they haven't been called to account for it yet. . . . A state attorney general who really wants to do some digging can find a lot of bad actions by servicers *and the question has always been who is going to do the digging* and who's going to find what facts are there." (*Id.*) (emphasis added).

As alleged, the defendants acted without authority, raising significant questions regarding their right to conduct a non-judicial foreclosure on the Subject Property. The actions of the defendants must be addressed and answered for. Their motion to dismiss must be denied.

## **ARGUMENT**

The Tenth Circuit recognizes that granting a motion to dismiss is a "harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir. 1986) (citing Wright & Miller, Federal Practice and Procedure: Civil § 1357 (1969)) (concluding that the Federal Rules of Civil Procedure have erected a powerful presumption against rejecting pleadings for failure to state a claim). The recent Supreme Court decisions in *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), have not changed this fundamental pleading principle.

In interpreting and applying *Twombly*, the Tenth Circuit recently said, "it [*Twombly*] reiterates the bedrock principle that a judge ruling on a motion to dismiss must accept all allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven. '[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual

proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

Thus, to succeed on their motion, Defendants must establish that, assuming *all* of the facts pleaded in the Complaint are true, Plaintiff is not entitled to any of the relief they seek. *Pace v. Swerdlow*, 519 F.3d 1067, 1073 (10th Cir. 2008) ("'We must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff.'") (Reversing trial court's grant of defendant's motion to dismiss) (Quoting *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007)).

I.   **DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED BECAUSE MERS STATUS AS A BENEFICIARY UNDER THE DEED OF TRUST SUBSEQUENT TO THE SALE OF THE PROMISSORY NOTE IS A FACTUAL ISSUE.**

Plaintiff's argument does not challenge that MERS *may have had* the right to take action as the purported beneficiary under the original Deed of Trust as MERS was a party to that instrument; this argument is not at issue because it rests on the assumption that the Promissory Note and Deed of Trust never changed hands, which is not the case in this matter.  Here, the issue is that once the original Promissory Note was sold by the original lender (Meridias), MERS lost its status as a "beneficiary" unless it entered into a separate agency/beneficiary agreement with the subsequent purchaser of the promissory note; this is a factual issue that cannot be resolved on a motion to dismiss.

More specifically, as alleged in the Complaint, the "Lender" with respect to Plaintiff's Note was Countrywide Bank, FSB ("Countrywide"). (Compl. ¶¶ 16-17.)  Likewise, the Trust Deed specifically defines the "Lender" as Countrywide.  (Compl. ¶ 19.)  MERS was a party to

the original Trust Deed, but solely as a nominee for the specifically defined Lender—

Countrywide.  (Compl. ¶ 20.)  Accordingly, MERS *would* have the right to take action on behalf

of the specifically defined Lender (Countrywide) but *does not necessarily* have the right to take

action on behalf of subsequent owners of the Plaintiff's Note.  This is precisely what cases from

Utah, including *Burnett*, and other states have held.

  In *Burnett v. Mortgage Elec. Registration Sys., Inc.*, No. 1:09-CV-00069-DAK, 2009 WL

3582294 (D. Utah Oct. 27, 2009), Judge Kimball held that "MERS had authority to 'take any

action' required of *Lender*, including the right to . . . foreclose and sell the property."  *Id.* at *4

(emphasis added).  But *Burnett* did not deal with the securitization or subsequent transfer of a

promissory note.  The case does not deal with the transfer of the rights associated with the

security underlying promissory notes.  *See* Utah Code Ann. § 57-1-35.  The facts in *Burnett* are

distinguishable from the facts here.  As alleged by Plaintiffs, Meridias—the original defined

Lender in the Trust Deed, sold Plaintiffs' Note, which was then resold and securitized, thus

transferring the rights and remedies defined in the associated Trust Deed to the subsequent,

unknown owner(s) of the Note.  (*See, e.g.*, Compl. ¶¶ 3, 25-28, 62-64.)

  Once the Note was sold or assigned, the owner(s)/assignee(s) of the Note—not MERS—

became the holders of the rights associated with the Trust Deed.  "[I]f [the original lender] has

transferred the note, MERS is no longer an authorized agent of the holder unless it has a separate

agency contract with the new undisclosed principal."  *In re Vargas*, 396 B.R. 511, 516-17

(Bankr. C.D. Cal. 2008); *see also Shields v. First Magnus Financial Corp.*, No. 3:10-cv-00641-

RCJ-RAM, 2011 WL 1304734, at *1 (D. Nev. April 1, 2011) (denying motion to dismiss where

"it [was] not clear MERS did not have the ability to make this transfer without some more

evidence of its agency to do so on behalf of First Magnus."); *Bellistri v. Ocwen Loan Servicing, LLC,* 284 S.W.3d 619, 623 (Mo. Ct. App. 2009) (holding that MERS could not transfer the promissory note where it did not hold the note and where it had not been given authority by the holder of the note); *Saxon Mortgage Serv., Inc. v. Hillery*, 2008 WL 5170180, at *5 (N.D.Cal. Dec. 9, 2008) (holding that the owner of a promissory note must give MERS authority to assign the note and trust deed prior to assignment by MERS); *In re Wilhelm*, 407 B.R. 392 (Bankr. D. Idaho Jul 07, 2009).

Defendants may claim otherwise, but this legal theory is well recognized.  For example, in the recent case of *Armacost v. HSBC Bank USA*, No. 10-CV-274-EJL-LMB, 2011 WL 825151 (D. Idaho Feb. 9, 2011), a federal district court in Idaho—a non-judicial foreclosure state— concluded that the defendant's (HSBC Bank) motion to dismiss should be denied because "the record is insufficient to establish that Defendant had the right to institute the foreclosure proceedings on the Property as a matter of law."  *Id.* at *6.  In that case, the foreclosing entity argued "that there is no requirement under Idaho law that it produce the Note, or to do anything else beyond that which is specifically articulated in the Idaho Trust Deed Act."  *Id.* at *9.  The court acknowledged the application of the Idaho Trust Deed Act but correctly surmised that the plaintiff was not challenging the defendant's compliance with the terms of the act for carrying out a non-judicial foreclosure sale; the separate and distinct issue was the plaintiff's challenge to the defendant's *authority* to initiate the sale under the Act:

> This Court does not believe, however, that the inquiry ends with Defendant's compliance with the Idaho non-judicial foreclosure statute.  Liberally construing Plaintiff's complaint, as this Court must, Plaintiff is not challenging Defendant's procedure-he is challenging Defendant's right to initiate the procedure.  One could not reasonably contend that compliance with a procedure gives substantive rights not otherwise possessed.  The question remains whether Defendant's right

or authority to foreclose on the Property remains.

*Id.* at *10.  To the extent that Defendants argue that the Court must assume they have the proper authority to initiate or cause to be initiated non-judicial foreclosure proceedings, and their only obligation is to comply with the requirements of the Utah Trust Deed Act, their argument is contrary to existing case law on the issue.  Again, MERS's authority, and thus ReconTrust's and Bank of America's authority, is one of fact—not of law—based on the existence or non-existence of agreements between MERS and the subsequent owner(s)/purchaser(s) of Plaintiff's Notes.

Indeed, just weeks ago, the Appellate Division of the New York Supreme Court agreed with homeowners' argument that "mortgages were never properly assigned to the [servicer] because MERS, as nominee for Countrywide, did not have the authority to effectuate an assignment of the mortgages."  *Bank of New York v. Silverberg,* N.Y. Slip Op. 05002, --- N.Y.S.2d---, 2011 WL 2279723 at *2 (N.Y. App. Div. June 7, 2011); *see also id.* at *4 ("Consequently, the foreclosure of a mortgage cannot be pursued by one who has no demonstrated right to the debt.").  As the numerous cases cited above establish, only the entity with the proper authority can effectuate or initiate foreclosure proceedings.

These cases are completely in-line with Utah statutory law, which holds that only a properly appointed, authorized trustee can conduct a non-judicial foreclosure sale.  *See* Utah Code Ann. § 57-1-23 ("The trustee who is *qualified* . . . is given the power of sale by which the trustee may exercise and cause the trust property to be sold . . . .").  And, as alleged in the Complaint, MERS lost its beneficial interest in the Trust Deed once the Note was sold, assigned, or transferred. (Compl. ¶¶ 20, 25-32, 62-64, 77-82.)

Courts across the country and the FDIC have repeatedly found that lenders and servicers have attempted to and have actually foreclosed on properties without the proper authority to do so.  For example, the Massachusetts Supreme Court recently voided two foreclosure sales because the foreclosing entities lacked the requisite authority to conduct the sales as they were not assignees of the mortgages at the time of the sales:

> We agree with the [trial] judge that the [mortgagors] . . . failed to make the required showing that they were the holders of the mortgages at the time of foreclosures. As a result, they did not demonstrate that the foreclosures sales were valid to convey title to the subject properties, and their requests for a declaration of clear title were properly denied.

*U.S. Bank Nat'l Assoc. v. Ibanez*, 941 N.E.2d 40, 44, 2011 WL 38071 (Mass. 2011); *see also Bank of New York v. Raftogianis*, 10 A.3d 236, 253-54 (N.J. Super. Ct. Ch. Div. 2010) (holding that in New Jersey, a judicial foreclosure state, "litigants facing foreclosure should be able to confirm that a complaint is properly filed by an individual or entity with the authority to proceed.").[3]  This building body of case law, the results of government investigations, and the

---

[3] On April 13, 2011, the Federal Deposit Insurance Corporation ("FDIC") issued a "Statement on Enforcement Orders Against Large Servicers Related to Foreclosure Practices." (Statement *available at* http://www.fdic.gov/news/news/press/2011/pr11069.html.)  In that Statement, the FDIC stated:

> The findings of the interagency review clearly show that the largest mortgage servicers had significant deficiencies in numerous aspects of their foreclosure processing. These deficiencies included the filing of inaccurate affidavits and other documentation in foreclosure proceedings (so-called "robo-signing"), inadequate oversight of attorneys and other third parties involved in the foreclosure process, inadequate staffing and training of employees, and the failure to effectively coordinate the loan modification and foreclosure process to ensure effective communications to borrowers seeking to avoid foreclosures.
>
> ***
>
> While today's orders put these large servicers on a path to improving their management of the foreclosure process, they do not purport to fully identify and remedy past errors in mortgage-servicing operations of large institutions. Much work remains to ensure that the servicing process functions effectively, efficiently, and fairly going forward. Importantly,

actions taken by state attorneys general cannot be ignored.  Lenders, servicers, and related

entities have repeatedly engaged in improper practices and have attempted to hide those

practices.  The Court should not dismiss the Plaintiffs' claims based on the defendants' requested

assumption that, in this case, everything is OK.

As recently summarized by a bankruptcy court in New York, "There are several

published New York state trial level decisions holding that the status of 'nominee' or 'mortgagee

of record' bestowed upon MERS in the mortgage documents, by itself, does not empower MERS

to effectuate an assignment of the mortgage.  These cases hold that MERS may not validly

assign a mortgage based on its nominee status, *absent some evidence of specific authority to

assign the mortgage*."  *In re Agard*, Case No: 810-77338-reg (Bankr. E.D.N.Y. Feb. 10, 2011)

(emphasis added).

In order for MERS to retain the rights identified in the Trust Deeds, it must have a

separate agency contract "with the new undisclosed" assignee of the Notes and Trust Deeds.  *Id*.

The oft-cited *Marty v. Mortgage Electronic Registration Systems* case reaches this very

conclusion.  In *Marty*, Judge Waddoups concluded that a separate contract between MERS and

the subsequent owner of a borrower's promissory note might suffice to create the necessary

express agency relationship to allow MERS to initiate foreclosure proceedings on behalf of the

subsequent owner of the note.  *Id.,* No. 1:10-CV-00033-CW, 2010 WL 4117196, at *5 (D. Utah

---

these enforcement orders do not contain monetary remedial measures. There is evidence
that some level of wrongful foreclosures has occurred. *It is important that servicers
identify any harmed homeowners and provide appropriate remedies. This is essential to
managing litigation and reputation risk, as well as fairness to borrowers.*

*Id.* (emphasis added).

Oct. 19, 2010);[4] *see generally also Castro v. Executive Trustee Services, LLC*, No. CV-08-2156-PHX-LOA, 2009 WL 438683, at *5 (D. Ariz. Feb. 23, 2009) (denying motion to dismiss on declaratory action claim where there was no evidence that MERS or the trustee was a transferee of the promissory note).[5]

BAC and MERS argue that "[n]umerous decisions from this Court uphold MERS's authority to act as a beneficiary, conduct foreclosure proceedings, and to make assignments of deeds of trust" (Defs.' Memorandum in Support of Motion to Dismiss ("Defs.' Memo.") at 5) in support of the proposition that MERS *always* retains its status as the beneficiary under the Trust Deed in *all* circumstances. Based on black letter contract law, this argument is simply wrong. Contracts can be and frequently are sold, assigned, or transferred. And upon the sale, assignment, or transfer, the transferee loses its rights in the contract and the transferor assumes all rights and obligations established in the contract, absent particular terms to the contrary. 6 Am. Jur. 2d *Assignments* § 108 ("As a general rule, an assignee takes the subject of the assignment with all the rights and remedies possessed by or available to the assignor."). As

---

[4] BAC and MERS will most certainly accuse Plaintiffs of mis-citing *Marty*. While Judge Waddoups concluded that MERS was a valid beneficiary, it is undisputed that Judge Waddoups failed to acknowledge numerous cases addressing MERS's status subsequent to the sale of the original promissory note and even acknowledged: "Thus, there is no reason to conclude that MERS could not contract with Plaintiff and other parties to maintain the power to foreclose despite the conveyance of the ownership of the debt *as long as MERS were to act on behalf of those parties who have the ultimate right to collect the debt*." *Id.* at *6 (emphasis added).

[5] More and more, courts are refusing to recognize MERS as an "alternative" to statutory recording schemes and concluding that MERS "internal tracking" is not a valid substitute for public recordings. *See, e.g.*, *In re Salazar*, No. BR 10-17456-MM13, 2011 WL 1398478, at *7 (Bankr. S.D. Cal. April 12, 2011) (collecting cases); *see also In re Agard,* Case No: 810-77338-reg (Bankr. E.D.N.Y. Feb. 10, 2011) ("MERS and its partners made the decision to create and operate under a business model that was designed in large part to avoid the requirements of the traditional mortgage recording process. This Court does not accept the argument that because MERS may be involved with 50% of all residential mortgages in the country, that is reason enough for this Court to turn a blind eye to the fact that this process does not comply with the law.").

established in *Marty*, *In re Vargas*, and the other cases cited above, MERS cannot prospectively

bind subsequent purchasers of Plaintiffs' Note by designating itself as the nominee/beneficiary—

which itself is contradictory—of all of Meridias' "successors."  The Arkansas Supreme Court

(Arkansas is a trust deed state) took this issue head on and concluded that MERS could not act as

the agent of the lender/owner of the promissory absent the specific direction of the current

lender/owner of the note:

> MERS asserts authority to act, arguing that once it becomes the agent on a
> security instrument, it remains so for every MERS member lender who acquires
> ownership. This authority is alleged to arise from the contractual relationship
> between MERS and MERS members.  Thus, MERS argues it may act to preserve
> the rights of the lender regardless of who the lender may be under the MERS
> electronic registration.  *We specifically reject the notion that MERS may act on its
> own, independent of the direction of the specific lender who holds the repayment
> interest in the security instrument at the time MERS purports to act*.

*Mortgage Elec. Registration Sys., Inc. v. Southwest Homes of Ark., Inc.*, 301 S.W.3d 1, 4-5 (Ark.

2009) (emphasis added).  The court concluded that "[n]othing in the record shows that MERS

had authority to act," *id.* at 5, and accordingly refused to accept MERS's argument that it was

acting as an agent on behalf of the true owner of the debt, *id.*

As the Plaintiff has alleged in her Complaint, Countrywide sold Plaintiffs' Note to

unknown third party investors shortly after Plaintiff executed it on June 25, 2008. (*See, e.g.*,

Compl. ¶¶ 3, 25-28, 62-64.)  Therefore, MERS lost any rights it claims as a "proper beneficiary"

when Plaintiff's Note was sold by Countrywide.  (*Id.*)  As cases from around the country have

recognized, the validity of the assignment from MERS to Bank of America (if there is one)

hinges on the authority that MERS had to act on behalf of the owner of the Note at the time

MERS made the assignment.  *See, e.g.*, *Southwest Homes of Ark., Inc.*, 301 S.W.3d 1, 4-5 (Ark.

2009).  The existence of any such agreement or grant of authority is an issue of fact and not resolvable on a motion to dismiss.

## II.    PLAINTIFF'S COMPLAINT DOES NOT ALLEGE "SPLITTING THE NOTE" OR "SECURITIZATION DISCHARGED THE DEBT" ARGUMENTS.

Plaintiff is not arguing, "… that the alleged securitization of the note precludes the lender, beneficiary or trustee from foreclosing under the deed of trust." (Defs.' Memo. at 7.) Rather, as alleged in the Complaint, Plaintiff seeks evidence regarding the unidentified and/or misrepresented current foreclosor's authority to foreclose.  Plaintiff's requests for such evidence have been consistently obfuscated by BAC – the Servicer of the Note. (Compl. ¶¶ 24, 92-107.)

In an attempt to shift the Court's attention away from the issues at hand, the Defendants mistakenly claim that Plaintiff's theory is based on the notion that the mere securitization of the Notes discharged Plaintiff's debt and "precludes the lender, beneficiary or trustee from foreclosing under the deed of trust." (Defs.' Memo. at 7-8.)  As discussed above, Plaintiff's Complaint and claims *are not* based on theories such as "securitization discharged my debt" or "splitting of the Note and Trust Deed."  Plaintiff does not challenge the Defendants' right to securitize Plaintiff's Note.  Rather, Plaintiff challenges their rights to enforce the Note via the security instruments (the Trust Deed) once the Note has been assigned or transferred, whether through securitization or otherwise.

Defendants' attempt at mischaracterizing Plaintiff's theories should be seen for what it is: a misguided attempt to obtain dismissal by confusing Plaintiff's claims with different claims brought by different plaintiffs based on different theories.

## III.   DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED BECAUSE PLAINTIFF'S COMPLAINT ADEQUATELY STATES A CLAIM FOR DECLARATORY JUDGMENT.

Defendants do not challenge the appropriateness of a declaratory decree on the facts alleged.  Any such challenge would be without merit because federal law clearly vests this court with the authority to provide such declarations.  "In a case of actual controversy within its jurisdiction, . . . any court of the United States. . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  The United States Supreme Court has held that declaratory relief is appropriate where it provides "specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 126 (2007) (holding declaratory judgment was appropriate)

Plaintiff has alleged an existing, justiciable controversy between the parties, namely, Defendants' right to initiate and conduct non-judicial foreclosures on the Subject Property. (Compl. ¶¶ 2, 23-24, 60, 63-67, 82-86, 112-115.)  Utah law requires that specific requirements be met before an individual or entity be allowed to pursue a non-judicial foreclosure.  Utah Code Ann. § 57-1-23 ("The trustee who is qualified under Subsection 57-1-21(1)(a)(i) or (iv) *is given the power of sale* by which the trustee may exercise and cause the trust proprety to be sold in the manner provided in Sections 57-1-24 and 57-1-27 . . . ") (emphasis added); *see also* Utah Code Ann § 57-1-21(3).  Defendants cannot, on whim and fancy, march to a non-judicial trustee's sale without meeting the proper criteria and establishing the proper authority.

The relief sought by the Plaintiff will be conclusive in that it will establish whether the Defendants have the right to take the actions threatened.  *See generally MedImmune*, 549 U.S. at 126 (2007).  The issues are ripe for resolution as the Defendants have and are attempting to

exercise the rights and remedies held by the true owner(s) of the Note and the associated Trust

Deed, resulting in harm to Plaintiff.  Because the Plaintiff is seeking specific relief through her

claim for declaratory judgment in regards to Defendants actions, the Court should deny

Defendants' motion to dismiss and allow this claim to proceed.


IV.    **DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED BECAUSE PLAINTIFF'S COMPLAINT ADEQUATELY STATES A CLAIM FOR NEGLIGENT MISREPRESENTATION.**

To state a claim for negligent misrepresentation, a plaintiff need only allege facts

establishing: (1) his or her reasonable reliance upon a second party's careless or negligent

misrepresentation of a material fact; (2) when the second party had a pecuniary interest in the

transaction; (3) was in a superior position to know the material facts; and (4) should have

reasonably foreseen that the injured party was likely to rely upon the fact. *Price-Orem Inv. Co. v.*

*Rollins, Brown and Gunnell, Inc.,* 713 P.2d 55, 59 (Utah 1986).  As negligent misrepresentation

is a tort sounding in negligence, plaintiffs asserting the cause of action must also establish the

existence of a duty.  *Id.*  Plaintiffs have adequately pleaded each of these elements.

With respect to the duty requirement, this Court recognizes the existence of a duty

between a borrower and a lender or a purported lender "when the lender 'goes beyond simply

providing money to the borrower and offers advice and consultation,'…if the borrower lacks

sophistication, or if the borrower is involved in a business with a special nature." *UBS Bank USA*

*v. Ibby, LLC,* No. 2:09-CV-372 TS, 2009 WL 4884383, at *6 (D. Utah Dec. 10, 2009)

(unpublished) (Utah follows the line of cases holding that a duty may arise where a lender goes

beyond simply providing money to the borrower and offers advice and consultation).  Indeed,

such actions may result in a fiduciary duty between the lender and borrower. *Id.*

In this case, BAC created at a minimum, a duty, and likely a fiduciary duty, when it went beyond simply representing itself as the servicer of the mortgage and began giving guidance and advice to Plaintiff.  As an initial matter, BAC misrepresented itself as the contracting party with respect to Plaintiff's mortgage loan despite the fact that BAC was merely the servicer.  (Compl. ¶ 93.)  BAC expressly admits this.  (Defs.' Memo. at 12-13 ("BAC is simply the servicer of plaintiffs' loan – it is not the lender; and is not a party to the deed of trust.")  This misrepresentation of material fact led Plaintiff to believe that she was negotiating with the party that held the authority to actually modify her loan when, in fact, BAC had no such authority. (*Id.*)  BAC knew this representation was untrue at the time it made it.  (*Id.*; Compl. ¶ 105.)  In another instance of going well beyond the standard "lender/borrower" relationship, BAC instructed Plaintiffs to go delinquent on their mortgage payments.  (Compl. ¶ 95.)  Plaintiff, who was current on her payments at the time, was told by BAC that she could not even discuss a modification unless she was delinquent on her payments.  (Compl. ¶¶ 90-93.)  Plaintiff followed BAC's instructions and went delinquent on her payments so that she could negotiate a modification with the purported "owner" of their mortgage loan.  (Compl. ¶ 96.)  As alleged by the Plaintiff, throughout this process and despite its representations, BAC never intended to modify her loan.  (Compl. ¶¶ 105-107.)  Indeed, BAC was incentivized to "string" Plaintiff along during the loan modification process in order to increase its own profits as the servicer and had additional incentives to deny the modification, continue to collect payments, and delay the foreclosure until the actual owner(s) of the debt came reckoning.  (*Id.*)

Plaintiff's allegations are corroborated by the numerous documents they submitted and

re-submitted to BAC over a period of at least six months.  (Compl.  ¶¶ 97-98.)  Plaintiff

repeatedly contacted BAC and BAC misrepresented that certain documents had not been

received despite the fact that Plaintiff had repeatedly sent in all of the paperwork that BAC had

requested.  (Compl. ¶¶ 97-99.)  Moreover, because of her reliance on the BAC's representations,

Plaintiff was led to believe that she would obtain a long-term workable solution and did not need

to seek out other solutions in order to retain possession of her house.  (*Id.*)  Obviously, Plaintiff

was damaged as a result and now face losing the house they have been living in and making

payments on for the past five years.

In sum, BAC did not exercise reasonable care in making representations to Plaintiff, and

BAC knew or should have known the information it supplied to Plaintiff was inaccurate.  As

described above, Plaintiff has been damaged as a result of BAC's misrepresentations in

numerous ways, including the fact that she now faces foreclosure on the Subject Property, which

may have been avoided had BAC not misrepresented facts to Plaintiff.  Because Plaintiff has

alleged well-pleaded facts establishing a claim for negligent misrepresentation against BAC, the

Court should allow this claim to proceed and should deny Defendants' motion to dismiss.

**V.     DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED BECAUSE
        PLAINTIFF'S COMPLAINT ADEQUATELY STATES A CLAIM FOR QUIET
        TITLE.**

"To succeed in an action to quiet title to real estate, a plaintiff must prevail on the

strength of his own claim to title and not on the weakness of a defendant's title or even its total

lack of title."  *Collard v. Nagle Constr.*, 2002 UT App 306, ¶ 18, 57 P.3d 603 (quoting *Church v.*

*Meadow Springs Ranch Corp.*, 659 P.2d 1045, 1048-49 (Utah 1983)).

Because Plaintiff's allegations at this stage are presumed true, her claim of title to the

Subject Property is stronger than that of Defendants.  Plaintiff executed the Note and Trust Deed

relative to the Subject Property (Compl. ¶¶ 15-16, 19), made payments on the Note for several

years years, and has an equitable interest in the Property.  None of the named Defendants have

any legal or equitable interest in the Subject Property.  (Compl. ¶¶ 2, 23-24, 61, 64-67, 83-87.)

They sold, assigned, or never received their purported "interest" in the Note and Trust Deed and

thus have no claim or interest in the Subject Property.  Accordingly, as to the named Defendants,

Plaintiff's claim to title is greater.[6]  Accordingly, the Court should allow Plaintiff's quiet title

claim to proceed as to the named Defendants and their motion to dismiss should be denied.

## CONCLUSION

Concurring with the majority in *Ibanez,* Justice Cordy joined by Justice Bradford, felt

compelled to add that "what is surprising about these cases is…the utter carelessness with which

the plaintiff banks documented the titles to their assets.  There is no dispute that the mortgagors

of the properties in question had defaulted on their obligations….Before commencing an action,

however, the holder of an assigned mortgaged needs to take care and ensure that his legal

paperwork is in order." *Ibanez,* 941 N.E.2d at 55 (Cordy, J., concurring).

Likewise, as stated just days ago, a non-judicial foreclosure, "which is designed to take

place outside of any judicial review, necessarily relies on the foreclosing party to accurately

review and assess its own authority to foreclose.  Considering that the non-judicial foreclosure of

one's home is a particularly harsh event, and given the numerous problems I see in nearly every

non-judicial foreclosure case I preside over, a procedure relying on a bank or trustee to self-

---

[6] It is worth noting that Plaintiff is seeking to quiet title with respect to the named defendants and not
necessarily with respect to the true owner(s) of the Notes and the associated rights and remedies tied to
the Trust Deeds.

assess its own authority to foreclose is deeply troubling to me." *Hooker*, Civ. No. 10-3111-PA, 2011 WL 2119103, *6 (D. Or. May 25, 2011).

Plaintiff has met her burden under Rule 8 of the Federal Rules of Civil Procedure by pleading facts sufficient to state claims entitling them to relief.  "Viewing this case through the lens of a Rule 12(b)(6) [motion]," *Pace,* 519 F.3d at 1073, Plaintiff has alleged facts that, if proven, plausibly establish the claims asserted and the relief sought.  And because Plaintiff's well pleaded facts are assumed to be true, BAC's, MERS', and Bank of America's motion to dismiss should be denied by the Court.

DATED:  July 9, 2011.

CORVUS LAW GROUP, LLC

/s/ Ryan R. West
Ryan R. West
Tyson B. Snow
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2011, I served the foregoing **MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** on the following via a Notice of Electronic Filing ("NEF") from the Court's CM/ECF system:

Ronald G. Russell, Esq
Matthew J. Ball, Esq
PARR BROWN GEE & LOVELESS, P.C.
185 South State Street, Suite 800
Salt Lake City, UT 84111
(T) 801-257-7954
(F) 801-532-7750

Michael B. Wall
AKERMAN SENTERFITT, LLP
511 Sixteenth Street, Suite 420
Denver, CO 80202
(T) 303-260-7715
(F) 303-260-7714

/s/ Ryan R. West